UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                              Plaintiff,

        v.                                              Case No. 20-cv-974-pp

WISCONSIN DEPT. OF CORRECTIONS,
KEVIN A. CARR, JACKIE GUTHRIE,
OFFICER BENIKE, NATALIE BLANKE,
and JODY MARCEAU,

                              Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT
PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT (DKT.
NO. 1), DENYING MOTION FOR PRELIMINARY INJUNCTION (DKT. NO.
10), DENYING MOTION TO COMPEL (DKT. NO. 11) AND GIVING
PLAINTIFF DEADLINE BY WHICH TO FILE AMENDED COMPLAINT**

---

        Plaintiff Charles B. Gill, Sr., an inmate at Kettle Moraine Correctional

Institution who is representing himself, filed a complaint alleging that the

defendants violated his civil rights under 42 U.S.C. §1983 by interfering with

his free exercise of religion in violation of the First Amendment. Dkt. No. 1. The

plaintiff also has filed documents which the court construes to be a request for

the court to issue a preliminary injunction, dkt. nos. 10, 10-1 and 10-2, and a

letter asking the court to compel the prison to give the plaintiff his documents

and copies, dkt. no. 11. This order resolves the plaintiff's motions, including

his motion to proceed without prepaying the filing fee, and screens the

complaint.

1

# I.     Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to let an incarcerated plaintiff proceed with his case without prepaying the filing fee if he meets certain conditions. One of those conditions is that the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b). Generally, once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 14, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $31.24 by August 4, 2020. Dkt. No. 5. The court received that fee on July 30, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

# II.    Screening the Complaint (Dkt. No. 1)

## A.    Federal Screening Standard

Under the Prison Litigation Reform Act (PLRA), the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

2

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

3

stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B. <u>Allegations in the Complaint</u>

The plaintiff explains that he is a devout Muslim. Dkt. No. 1 at ¶12. At the time of the events described in the complaint, the plaintiff was a cook in the main kitchen at the Kettle Moraine Correctional Institution. <u>Id.</u> at ¶11.

The plaintiff alleges that on May 21, 2020, around 1:15 p.m., defendant corrections food service lead Natalie Blanke came to the plaintiff and another inmate and told them that after they finished preparing the pasta primavera, they had to slice and dice ham. <u>Id.</u> at ¶13. The plaintiff says he told Blanke that he was a Muslim and that it was forbidden for him to handle the ham; Blanke then left. <u>Id.</u> The plaintiff says that approximately ten minutes later, at 1:25 p.m., defendant corrections officer Benike came over and asked the plaintiff what was wrong. <u>Id.</u> at ¶14. The plaintiff informed Benike that Blanke wanted him to slice and dice the ham, but that the plaintiff could not do it because of his religious beliefs. <u>Id.</u> The plaintiff explained to Benike that that day—May 21, 2020—was the 28th of the Islamic holy month of Ramadan and that the plaintiff was participating in the fast. <u>Id.</u> The plaintiff asserts that Benike told the plaintiff that "per Ms. Jackie Guthrie [the Food Service Administrator at Kettle Moraine] [the plaintiff] could either cut the ham or get a ticket (conduct report) and lose [his] job in the kitchen." <u>Id.</u> at ¶15. The plaintiff says he repeated that it was forbidden for him to handle pork because he is a

Muslim. Id.

The plaintiff alleges that at 1:30, Guthrie came over and "tried to explain many different ways to cover up and cut the ham." Id. at ¶16. The plaintiff says he "told her at least 10 times that he could not cut, touch, or handles [*sic*] the ham because it goes against his religious beliefs." Id. He recounts that Guthrie and Benike then went to Guthrie's office to call Chaplin Damkot (not a defendant). Id. at ¶17. The plaintiff went and told Officer Chase (not a defendant) and defendant Jody Marceau (another corrections food service lead) the problem and they both ran to Guthrie's office. Id.

The plaintiff contends that he then went over to the kettles in the kitchen and "broke down." Id. at ¶18. He explains that he was very upset because he "could not believe that he was about to be forced to go against his religious beliefs." Id. He says that five minutes later, Benike came over with Chase and said that the plaintiff did not have to deal with the pork. Id. The plaintiff says that Benike told him that "if it wasn't for Chaplin Damkot, he [Benike] would have sided with Ms. Guthrie because he [Benike] knows nothing of the Muslim faith." Id.

The next day (the 29th day of Ramada), around 1:30 p.m., Blanke came to the plaintiff and told him that because another inmate was not at work, the plaintiff had to cook the ham. Id. at ¶19. The plaintiff says he looked at her and said, "[W]hat about what happened yesterday?" Id. The plaintiff asserts that Blanke responded, "You are the next person in line when [the other inmate]

5

isn't here, and you have to step up." Id. at ¶20. The plaintiff says he "was then ordered to cook the ham." Id. at ¶21.

The plaintiff says that he looked into Guthrie's office but that she was not at her desk. Id. The plaintiff explains that the door to the corridor that leads to Guthrie's office is always locked, that the food service manager (Ms. White, not a defendant) was off that day and that there was no bell, buzzer or intercom "that will help any inmate that works in the kitchen get the attention of Ms. Guthrie." Id. He says that Guthrie had ordered inmates not to knock on her door or yell for her to come to the door, so his only option was to "follow his last directive or be disciplined for failing to follow a direct order." Id.

The plaintiff asserts that

[d]efendant Jody Marceau was also working in the Kitchen on May 22, 2020. She knew that [the plaintiff] was not to handle pork, because she was working on May 21, 2020 and was in the office when it was told that [the plaintiff] was not to handle pork. She did not correct Defendant Blanke's actions, nor did she help [the plaintiff].

Id. at ¶22.

The plaintiff says that he left the kitchen, reported back to Unit 9 and asked an officer to call a sergeant. Id. at ¶23. Sergeant Oberkirsch (not a defendant) arrived at Unit 9, and the plaintiff explained the problem "to both of them." Id. The plaintiff says he then filed an inmate complaint and wrote a letter to Mr. Hocevar. Id. The plaintiff says that on May 29, 2020, he wrote a letter to defendant Kevin Carr, the secretary of the Wisconsin Department of Corrections but that as of the date he drafted his complaint he had not

6

received a response. Id.

The plaintiff attached the letter as an exhibit to the complaint; it details the events of May 21 and May 22. Dkt. No. 1-1 at 7. The letter also contains more details; the plaintiff says in the letter that "I was forced to cook the ham. I was also given the laser thermometer and the regular thermometer to where I had to stab the ham chunks, take the temperature and then slide the ham off the thermometer with my hands afterwards." Id.

The plaintiff asserts that on June 1 he talked with Hocevar (not a defendant), Ms. White (not a defendant) and Guthrie. Id. at ¶25. He says that Hocevar's words to him at the end of the meeting were, "There is nothing I can do now. What's done is done. But from this day forth, you do not have to cook pork." Id. The plaintiff says, "The video they watched clearly shows [the plaintiff] cooking and handling pork which is against [the plaintiff's] religion, and at some point, [the plaintiff] does walk pass the door that leads to Ms. Guthrie's office, but he did not stop, because he did not see her." Id. The plaintiff attached to the complaint a June 3, 2020 letter from Hocevar to the plaintiff, indicating that the event on May 22 took place while Guthrie was on site but that the plaintiff did not bring the issue to her attention. Dkt. No. 1-1 at 2.

The plaintiff seeks declaratory relief, injunctive relief in the form of an order requiring the institution to enact policies and conduct training, and compensatory and punitive damages. Id. at ¶¶36-40.

7

C.      Analysis

The plaintiff has sued the Wisconsin Department of Corrections, Secretary Kevin Carr, Guthrie, Blanke, Marceau and Benike. Dkt. No. 1 at 1.

Section 1983 prohibits a "person" acting under color of state law from violating another's civil rights. The Wisconsin Department of Corrections is not a person, nor is it a separate legal entity that can be sued under §1983. See Louis v. Milwaukee Cty. Jail, No. 17-cv-113-wed-pp, 2017 WL 3037567 at *2 (E.D. Wis. July, 18 2017) (citing Powell v. Cook Cty. Jail, 814 F. Supp. 757, 758 N.D. Ill. 1993)). The court will dismiss the Wisconsin Department of Corrections.

The plaintiff says that he wrote Carr a letter, detailing the incidents. Carr is the secretary of the Wisconsin Department of Corrections and does not supervise the day-to-day operations of Kettle Moraine Correctional Institution. Section 1983 "does not authorize 'supervisory liability.'" Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011) (citing Iqbal). And even if the plaintiff had demonstrated that Secretary Carr received his letter, the fact that the secretary does not supervise day-to-day operations at the prison means that his receipt of the plaintiff's letter "is insufficient to establish liability . . . ." Williams v. Raemisch, 545 F. Appx. 525, 529 (7th Cir. 2013) (citing Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009)). Finally, §1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a

8

constitutional violation." Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996)). Because §1983 makes public employees liable "for their own misdeeds but not for anyone else's," Burks, 555 F.3d at 596, a plaintiff must specifically allege what each individual defendant did (or did not do) to violate his constitutional rights. The plaintiff has not alleged that Carr had any part in the events of May 22, 2020. The court will dismiss Carr.

The plaintiff claims that the remaining defendants violated his rights under the free exercise clause of the First Amendment. "Prisoners retain the right to exercise their religious beliefs, although that right is not unfettered." Ortiz v. Downey, 561 F.3d 664, 669 (7th Cir. 2009). Where prison officials "personally and unjustifiably place[] a substantial burden on [an inmate's] religious practices," they may violate an inmate's constitutional rights. Thompson v. Holm, 809 F.3d 376, 379 (7th Cir. 2016). "A substantial burden '[p]uts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. (quoting Thomas v. Review Bd., 450 U.S. 707, 717-718 (1981)). "A burden is unjustified if it is not reasonably related to a legitimate penological interest." Id. To determine whether the burden is justified, a court must consider "(1) whether the restriction 'is rationally related to a legitimate and neutral governmental objective'; (2) 'whether there are alternative means of exercising the right that remain open to the inmate'; (3) 'what impact an accommodation of the asserted right will have on guards and other inmates;'

9

and (4) 'whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns.'" Id. (quoting Lindell v. Frank, 377 F.3d 655,657 (7th Cir. 2004)).

The plaintiff also claims the defendants violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). RLUIPA prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution," unless "that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," §2000cc–5(7)(A), but "a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." Holt v. Hobbs, 574 U.S. 352, 135 S. Ct. 853, 862, (2015) (citing Burwell v. Hobby Lobby, 573 U.S. 682, 717, n.28 (2014)).

The plaintiff has described two separate but related incidents that occurred on consecutive days. He alleges that on May 21, when he refused to slice ham due to his religious beliefs, defendants Guthrie, Blanke and Benike had another inmate prepare the ham. The plaintiff has not stated a claim against any of these three defendants for the events of May 21, 2020 because ultimately, none of them burdened his free exercise of his religion.

10

The court suspects, however, that the plaintiff recited the events of May 21 as background for what happened on May 22. The plaintiff alleges that on that day, Blanke ordered him to cook ham, and that because he could not find or reach Guthrie—because the food services administrator was not in and because he was afraid if he did not follow the order he would be disciplined—he violated the tenets of his faith and cooked the ham. Id. at ¶¶19-21, 25; Dkt. No. 1-1 at 7. The plaintiff implies that Blanke knew from the events of the previous day that he was not to handle pork, yet she ordered him to cook the ham in the absence of the other inmate, telling him that he "had to step up." Her order put significant pressure on the plaintiff to modify his behavior in violation of his beliefs—in fact, it caused him to modify that behavior and to violate his beliefs. The plaintiff implies that there were others who could have cooked the ham; he says that Blanke told him that he was "next in line." Rather than asking another inmate to prepare the ham—an "obvious alternative" to requiring the plaintiff to violate his beliefs, and a less restrictive means for accomplishing the legitimate goal of preparing dinner—Blanke ordered the plaintiff to do so. The plaintiff has stated a claim against Blanke, both for a First Amendment free exercise violation and for a RLUIPA violation.

The plaintiff alleges that Marceau was working in the kitchen that day, knew that the plaintiff was not to handle pork and knew that Blanke nonetheless ordered the plaintiff to prepare the ham. The plaintiff alleges that both Blanke and Marceau were "corrections food service leads," so it does not

11

appear that Marceau was Blanke's supervisor or had any authority over Blanke. He implies that Marceau had some sort of responsibility to prevent Blanke from making the plaintiff cook the ham. But "[p]ublic officials do not have a free-floating obligation to put things to rights . . . ." Burks, 555 F.3d at 595. "[N]o prisoner is entitled to insist that one employee do another's job." Id.

On the other hand, if Marceau was Blanke's supervisor, the analysis changes. Supervisors can be held liable for constitutional violations caused by their staff where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant, 347 F.3d at 1039. For a supervisor to face liability, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. If Marceau was Blanke's supervisor and knew the plaintiff was not to handle pork due to his faith but ignored the fact that Blanke ordered the plaintiff to do so, her inaction could violate the First Amendment and RLUIPA.

The court will, at this early stage, allow the plaintiff to proceed on First Amendment and RLUIPA claims against Marceau, but notes that if Marceau was not Blanke's supervisor, the claim may be subject to dismissal.

The plaintiff has not stated claims against Guthrie or Benike for the May 22 incident. It does not appear that Benike was present or involved in the May 22 incident. Nor does it appear that Guthrie was present or involved; the plaintiff says he tried to find Guthrie but couldn't. The plaintiff does not allege that Guthrie knew that Blanke was going to order the plaintiff to cook the

ham or that she directed Blanke to make the plaintiff cook the ham. There is no indication that Guthrie knew anything about the May 22 incident until afterward, when the plaintiff met with her, Hocevar and White. The court will not allow the plaintiff to proceed against Benike or Guthrie.

## III. Motion for Preliminary Injunction (Dkt. Nos. 10, 10-1, 10-2 and 12)

On August 21, 2020—three months after the incidents described in the complaint—the court received three documents from the plaintiff. One document is styled as a court order and titled "Order to Show Cause for a Preliminary Injunction." Dkt. No. 10-2. The proposed order, which has a line at the bottom for this court's signature, requires defendant Benike and Guthrie to appear and show cause why the court should not enjoin them from "making threats, filing false disciplinary charges, and wrongful termination of job functions." Id.

The second document is a memorandum of law. Dkt. No. 10-1. In it, the plaintiff recounts that he filed a lawsuit alleging that he was ordered to cook pork, and he says that "[i]t is clear that the actions taken by Officer Benike and Jackie Guthrie are a form of retaliation." Id. at 1. He then lists cases from various courts (only one of which is from the Seventh Circuit) which he asserts hold that making threats, filing false disciplinary charges and termination from or denial of job programs constitute retaliation. Id. at 1-2.

The third document is a declaration from the plaintiff. Dkt. No. 10. The plaintiff asserts that on August 15, 2020, Benike told the plaintiff that if

13

Benike decided to write the plaintiff a conduct report, he'd write it for theft and recommend that the plaintiff be fired from the kitchen. Id. at 1. The plaintiff says that a bit later that day, Benike said to the plaintiff, "If you're suing me then I'm going to give you something to sue me for." Id. The plaintiff avers that the next day, Benike wrote a false conduct report against the plaintiff; the plaintiff was found guilty by a supervisor but only given a reprimand. Id. He says, however, that Benike called the unit and told the officer the plaintiff was fired. Id. The plaintiff references an incident with an inmate named Lewis and some cheese and argues that at best, he was guilty of unauthorized transfer of property, not theft. Id. He avers that on August 18, 2020, he was called into the kitchen staff office where he signed termination of job paperwork signed by Guthrie. Id. The plaintiff questions how he could be fired from his kitchen job for a reprimand, asserts that he is in fear for his future and freedom and life and says that the retaliation must stop. Id. at 2.

On September 14, 2020, the court received from the plaintiff a supplement to the above documents. Dkt. Nos. 12, 12-1. The supplement includes a conduct report written by Benike. Dkt. No. 12-1 at 1. In it, Benike says that on August 15, 2020, he was working in food service when another staff member reported that she had seen the plaintiff receive two slices of cheese in a wax bag from inmate Stanley Lewis. Id. Benike indicates that he went out and talked to inmate Lewis, asking if Lewis had put the cheese in the breakfast bags; Lewis replied that he had. Id. Benike said he asked Lewis if

14

Lewis gave the plaintiff a bag of cheese, and that Lewis replied that he had, that it was "extra." Id. Benike said that Lewis admitted to knowing that he shouldn't be handing out extra food. Id. Benike said he then asked the plaintiff why the plaintiff had the extra cheese in his possession, and the plaintiff had responded that because it was extra, the plaintiff didn't think it was a big deal. Id. Benike said he asked the plaintiff if the plaintiff knew he wasn't allowed to eat extra food, and said that the plaintiff responded, "yes but I thought it was ok because the black shirt was standing right there." Id. Benike wrote the plaintiff up for DOC 303.37, theft. Id.

The report indicates that the plaintiff disputed the allegations, accusing Benike of lying on the ticket. Id. The plaintiff indicated that he never said he thought it was okay, but said he was never able to ask the black shirt because "as she came out the office the cheese went from mr. lewis' hand to [the plaintiff's] hands to her hands." Id. The plaintiff asserted that Benike was a defendant in this case and he felt that Benike was retaliating against him as a result. Id. The document shows that the disposition of this conduct report was "guilty," with a "minor disposition." Id. at 1, 2.

The plaintiff also attached the inmate work/program assignment/placement form showing that on August 22, 2020, he was removed from his old assignment; the form is signed by J. Guthrie as the "authorizing signature," with a date of August 18, 2020. Id. at 3. Finally, the plaintiff included an appeal of a contested hearing form in which he asserted

15

that he was guilty only of unauthorized transfer of property, asked why he lost his job and asserted that he was being punished twice for the same thing. Id. at 4.

To the extent that the plaintiff is seeking a preliminary injunction or restraining order against Benike and Guthrie, the court must deny that motion. "A preliminary injunction is an extraordinary remedy." Tully v. Okeson, No. 20-2605, 2020 WL 5905325, at *2 (7th Cir. 2020) (quoting Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ., 858 F.3d 1034, 1044 (7th Cir. 2017)). For a party to obtain preliminary injunctive relief, he "must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." Id. (quoting Turnell v. CentiMark Corp., 796 F.3d 656, 662 (7th Cir. 2015)). If the party makes that threshold showing, the court then must consider "the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the 'public interest.'" Id. "A movant's showing of likelihood of success on the merits must be 'strong.'" Id. (quoting Ill. Republican Party v. Pritzker, 973 F.3d 760, 762 (7th Cir. 2020)). A "strong" showing requires a "demonstration of how the applicant proposes to prove the key elements of [his] case." Id.

The plaintiff has not made the required showing that absent injunctive relief, he will suffer irreparable harm, or that there is no adequate remedy at

law. The plaintiff speculates that because Benike allegedly got him fired from his kitchen job once, Benike might do something else to him in retaliation for this lawsuit; he does not say what harm he thinks he may suffer from Guthrie. A harm is irreparable if it "cannot be prevented or fully rectified by the final judgment after trial." Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc., 549 F.3d 1079, 1089 (7th Cir. 2008) (citation omitted). The plaintiff has lost his job, but that can be rectified by a final judgment, through money damages. For that same reason, the plaintiff cannot demonstrate that there is no adequate remedy at law, because if he wins on a claim of retaliation, an award of damages will make him whole. See Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). The court will deny the plaintiff's motion for a preliminary injunction.

But the plaintiff has not yet sued Benike and Guthrie for retaliation. The court will give the plaintiff an opportunity to amend his complaint to add a retaliation claim against these two defendants. The court is including with this order a blank complaint form. The plaintiff must write the word "Amended" on the first page in front of the word "Complaint." He must write case number for this case—20-cv-974—in the space provided for the case number on the first page. He must list all the defendants he is suing as defendants. On the lines on pages two and three, under "Statement of Claim," he must state all the facts relating to his free exercise/RLUIPA claims *and* his retaliation claims. If there is not enough space on those two pages, the

17

plaintiff may use up to five additional pages, double-spaced so the court can read them. The plaintiff must include all the facts relating to all the claims in the amended complaint, because it takes the place of the original complaint. He cannot simply say, "See original complaint for claims against Blanke and Marceau."

If the plaintiff decides, after reading this order, that he prefers to proceed on the free exercise/RLUIPA claims against Blanke and Marceau and does not wish to add retaliation claims against Benike and Guthrie, he does not need to do anything, and the court will require the complaint to be served on Blanke and Marceau only.

## IV.    Motion to Compel (Dkt. No. 11)

The plaintiff says that on August 31, 2020, he dropped off the documents that support his motion for a preliminary injunction to be copied. Dkt. No. 11 at 1. He says on September 3, 2020, one of the teachers dropped off the cover letter to the clerk, but that when the plaintiff asked about the rest of his copies, he was told that there wasn't anything else. <u>Id.</u> He says he tried to ask an officer about it on September 4, but that the officer evaded him. <u>Id.</u> The plaintiff explains that he was charged $0.75 for give copies, but he got only one copy; he says four originals and four copies were missing as of the date of his motion. <u>Id.</u> He asks the court to compel the institution to give him his copies and the originals. <u>Id.</u>

The court will deny this motion. The plaintiff must try to work this out

18

with the prison staff; if he needs to, he can use the inmate complaint review process. The court received the documents and the cover letter, so these documents are on file. The court expects that prison staff will return original legal materials to inmates.

## V.    Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Wisconsin Department of Corrections, Kevin A. Carr, Jackie Guthrie and Officer Benike from the case.

The court **DENIES** the plaintiff's motion for a preliminary injunction. Dkt. No. 10.

The court **DENIES** the plaintiff's motion to compel. Dkt. No. 11.

The court **ORDERS** that if the plaintiff wishes to file an amended complaint as described in this order, he must file it in time for the court to *receive* it by the end of the day on **December 18, 2020**. If the court does not receive an amended complaint by December 18, 2020, it will have the original complaint served on Blanke and Marceau only.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$318.76** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

19

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2).

The agency shall clearly identify the payments by the case name and number.

If the plaintiff transfers to another county, state or federal institution, the

transferring institution shall forward a copy of this order, along with the

plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the institution where the

plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing

Program institutions[1] must submit all correspondence and case filings to

institution staff, who will scan and e-mail documents to the court. Plaintiffs

who are inmates at all other prison facilities must submit the original

document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will

only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take

other required actions by the deadlines the court sets, the court may dismiss

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay
Correctional Institution, Waupun Correctional Institution, Dodge Correctional
Institution, Wisconsin Secure Program Facility, Columbia Correctional
Institution, and Oshkosh Correctional Institution.

20

the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court includes with this order a blank complaint form and a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 3rd day of November, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21